## Girard Trust Co. v. Aetna Casualty and Surety Co.

*J. D. McCoy* and *A. H. Wintersteen,* for plaintiff.

*F. L. Ward,* for defendant.

MARTIN, P. J., July 31, 1928.—At the trial, both parties submitted requests for binding instructions. That of the defendant was affirmed. The suit was upon a bond given by the defendant as surety for the performance of the conditions of a lease by the lessees, who were the principals in the bond. The defenses advanced at the trial and urged in support of the contention that the plaintiff cannot recover in this suit are: (1) That the lease, for the performance of the conditions of which the bond was given, was never in force; (2) that the bond was not an enforceable obligation of the defendant, it not having been accepted by plaintiff; (3) that the bond was not an enforceable obligation against the defendant by reason of defaults by the principals under said lease, existing and known to the plaintiff at the time the bond was delivered; (4) that the condition of the bond requiring five days' notice of default of the principals to be given to the surety was not met by plaintiff; (5) that the defendant is relieved from liability by the wrongful ouster of the principals through ejectment proceedings brought by the plaintiff; (6) that the proofs of damage for the alleged defaults of the principals were insufficient to sustain recovery.

The lease, for the performance of which the bond was given, was dated Jan. 2, 1922. It was for a term of fifteen years and was given to take the

place of a prior fifteen-year lease dated Jan. 26, 1918, to Cosgrove & Company, and by them, with the consent of the lessor, the premises were sublet to Thomas F. Curry, one of the parties to the present lease, with certain guaranties by Cosgrove & Company. In September, 1920, the plaintiff entered judgment in ejectment in Somerset County, Pennsylvania, against Cosgrove & Company, who entered a rule to open the judgment and another rule to strike off the judgment. The rule to strike off was discharged without a disposition of the rule to open the judgment. On Dec. 23, 1921, the Girard Trust Company, as lessor, entered into an agreement providing for the lease involved in the present suit for a period of fifteen years from Jan. 2, 1922, and for the payment of $5214.64, overdue royalties, taxes and charges, with provisions that upon the execution of the new lease—the one involved in this suit—all disputes with Cosgrove & Company, including the suit in Somerset County, should be settled and a certified check of Cosgrove & Company, held to secure the performance of the lease, should be returned to them. The evidence with respect to this agreement of Dec. 23, 1921, was properly received at the trial. It indicated how and when the then-existing lease was to end and furnished an explanation for the non-delivery of the lease involved in the present suit.

While delivery of a written lease, or a copy thereof, to the lessee may not be essential to its validity or enforcement, yet, where the parties clearly contemplate the delivery of the written evidence of the lease before it is effective, the lease is not in operation until the delivery is made. The question of the time when the lease is to begin is determined by the intention of the parties. If only one copy of a written lease is made and held by the lessor, and where this is contemplated by the parties, the execution of the lease by the lessee and permitting the written lease to rest with the lessor is a sufficient delivery; but where the parties provide for a lease in triplicate, one copy of which is to be held by the lessor and one copy by each of the lessees, and the correspondence indicates that the lease is not to be in force until properly executed and delivered, this intention becomes a part of the contract and the lease is not in force until delivery, unless delivery is waived by the parties. If, notwithstanding non-delivery of a copy of the lease, the parties take possession, pay rent and comply with the terms of the lease, the physical delivery of the writing itself will be considered as waived.

In the present case, the lease was dated Jan. 2, 1922. The acknowledgment of the lessees was made on June 1st of that year, and the acknowledgment of the lessor on July 6, 1922. The parties contemplated acknowledgment of the lease, and it was not operative before acknowledgment. The correspondence shows that the lease was not executed on June 1, 1922, when it was signed and acknowledged by the lessees; that on June 28th the leases were returned to the lessor with seals affixed by the lessees as requested, but not executed by the lessor; and the evidence shows that, after acknowledgment and execution by the lessor, the triplicate copies were retained and none ever sent to the lessees. The lease could not have been considered in force prior to Dec. 13, 1922, the time when the lessees met the request of the lessor to send the bond required by the lease. On July 11, 1922, the plaintiff wrote to the agent of the lessees asking for the bond to "close the lease," which indicates that the lessor did not consider the lease closed until the receipt of the bond. It is questionable whether or not the lease could be considered as "closed" prior to Aug. 27, 1923, when the suit in Somerset County was marked settled and the certified check of Cosgrove & Company returned to them, as provided by the agreement of Dec. 23, 1921; and it is a proper legal conclusion that the lease

was never in force, owing to non-delivery of copies to the lessees, in the absence of evidence of a waiver by the lessees.

The date when the lease became operative, if at all, is important to determine the liability of the surety on the bond. If the lease was never in force, the bond had no life, and if the lease only became operative at a certain time, then the bond could not be said to cover any default accruing prior to the time when the lease began to operate. The date is important also in determining the duty of the lessor to the surety with respect to defaults upon the part of the lessees existing and known to the lessor prior thereto.

The bond upon which plaintiff has sued was dated Sept. 23, 1923, the condition being: "If the said principals shall well and truly and faithfully carry out and perform the conditions contained in said agreement dated January 2, 1922, then this obligation shall be void; otherwise to be and remain in full force and effect." It was subject to the express condition "that notice of default under this obligation shall be given to the surety at its home office, Hartford, Connecticut, by registered mail, within five days after discovery of such default." There was a further provision that no suit should be brought thereon after Sept. 23, 1923; and that it might be continued in force from year to year by consent of the parties and the issuance of a renewal certificate. The bond was sent to the plaintiff on Dec. 13, 1922, following a request for it on July 11, 1922, to "close the lease." While the evidence does not show any express rejection of the bond, there is evidence that it was not satisfactory to the lessor and was not accepted by it. While formal acceptance may not be necessary, yet where, as here, the lease was not to be operative until the bond had been furnished, there should be evidence of acceptance by the obligee. The evidence does not prove an acceptance, but, in effect, a rejection. As late as May 15, 1923, Mr. Wintersteen, counsel for the Girard Trust Company, trustee, the lessor and obligee in the bond, wrote to the attorney for Cosgrove & Company that the bond was not satisfactory and he "could not advise the trustee to accept it in lieu of the certified check," referring to the check of Cosgrove & Company, which was to be surrendered on the consummation of the lease. On July 9, 1923, the obligee sent letters to Curry and McDermott, the lessees, in the nature of a notice, objecting to the form of the bond as not being in accordance with the conditions of the lease and asking for a new bond. At this time the lease was not in force and the bond was not acceptable to the obligee. There is no later evidence of any notice or action that suggests acceptance of the bond, unless it is the action of the obligee in returning the certified check to Cosgrove & Company and marking the lawsuit in Somerset County settled on Aug. 27, 1923. After the position taken by counsel and by the obligee, it was incumbent upon it by some words or action to accept the bond before it could be considered in force.

Assuming that the lease was effective, as contended by plaintiff, from Jan. 2, 1922, and that the bond was binding upon the defendant from the time of its delivery to the obligee, on Dec. 13, 1922, the evidence discloses that the lessees had committed repeated defaults in payment of monthly royalties falling due prior to this time. This was known to plaintiff, and it was in duty bound to inform the surety when the bond was delivered in December, 1922. The surety might have refused to be responsible for the performance of the contract which had repeatedly been broken. Neglect to inform the surety when the bond was delivered was in effect a fraud upon the surety.

At the trial it was assumed that the minimum royalties were payable not later than the last day of the month succeeding that in which they accrued. This assumption was erroneous. Under the terms of the lease, the minimum

royalties fell due on the 30th of the current month in which they accrued. The lease provided that the royalties for coal mined shall be paid "on the last day of each month for all coal mined, sold, shipped or taken away from said premises, or sold or used at the mine, during the preceding month;" but paragraph 2 of the lease (page 47, Notes of Testimony) provides that the minimum royalty shall be fifteen cents per ton on 40,000 tons annually, payable "in case the minimum amount of coal is not mined . . . monthly to lessor, on or before the last day of each month." The monthly payment was one-twelfth of the yearly minimum, or $500. The royalty for coal mined or taken away or used was to be paid for on the last day of the month following that in which it was sold or taken away, but where coal was not sold or taken away, the minimum royalty was to be paid on or before the last day of each month; and under this construction, the default of the lessees was greater and longer continued than was assumed by the parties at the trial. In other respects the conditions of the lease were broken prior to the delivery of the bond to the plaintiff. The condition of the mine, inside and outside, the buildings, machinery and equipment, of which the plaintiff complains and for which it is seeking to hold the defendant responsible under the bond, must have been known as early as November, 1922, when an inspection of the mine was made at plaintiff's request and by plaintiff's agents. The formal report of the engineer was made to plaintiff on Dec. 16, 1922, but the knowledge of its agents, employed for this purpose and acquired in November, must be taken to be the knowledge of the employer. This was within the knowledge of the plaintiff at the time of the delivery of the bond, and no notice thereof was given to the defendant. This defense is conclusive of the claim of plaintiff and sufficient warrant for binding instructions.

The condition of the bond requiring five days' notice to the surety of any defaults of the principals was not met by the plaintiff. The notices were not given within five days after knowledge of defaults, excepting the removal of property on July 12, 1923, notice of which was given to the surety July 14, 1923. This notice was within five days, but the evidence failed to show that the property removed was covered by the terms of the lease prohibiting removal of property. There was not sufficient evidence to show that the property removed belonged to the plaintiff or was subject to its control. The evidence indicated that this property belonged to Curry individually. If this property had been within the terms of the lease, there was no evidence for submission to the jury showing its market value. Those who attempted to fix figures made estimates or gave opinions of values without qualifying as possessing knowledge of market values upon which to base an opinion. The lessees failed to pay the minimum royalty for May, 1923, amounting to $500. Notice of this non-payment was given to the surety on July 2, 1923, but this royalty was due on May 31st and not on June 30th. The notice was not in time. The notice of July 16, 1923, related to matters known to the plaintiff in December, 1922.

The surety is discharged from liability when the obligee does anything prejudicial to the rights of the surety. On July 17, 1923, plaintiff entered an amicable action in ejectment and confession of judgment in the courts of Somerset County against the lessees, and on July 24th a *habere facias possessionem* issued, under which possession of the leased premises was delivered to plaintiff by the Sheriff of Somerset County. In August, 1923, a petition was presented to the Court of Common Pleas of Somerset County, upon which rules issued to open and to strike off the judgment in ejectment. An answer was filed by plaintiff containing an averment that no bond was ever furnished

complying with the terms of the lease. On Feb. 6, 1924, the judgment was vacated and stricken off, for the reason that thirty days' notice of default and demand for performance had not been given, which was a prerequisite to the confession of a judgment in ejectment under paragraph 12 of the lease. This violation of the provisions of the lease must have been prejudicial to the position of the surety with respect to its principals, for the possession of the property was not only taken away wrongfully and withheld for a considerable time, but the fact of the entry of such a judgment would affect a surety's chances of recovery against the principals.

There is not sufficient proof of damage to go to the jury with respect to the property damage, but this does not apply to the non-payment of installments of rent or taxes; these amounts are liquidated. The trial judge was right in affirming defendants' point for binding instructions. No adequate reason has been assigned for granting a new trial.

And now, to wit, July 31, 1928, the rule for a new trial is discharged.